[Civ. No. 483. Fifth Dist. July 27, 1965.]

CHERYL TURNER, Plaintiff and Appellant, v. NANCY NADINE MANNON et al., Defendants and Respondents.

James C. Janjigian and Paul S. Mosesian for Plaintiff and Appellant.

Frederic A. Jacobus for Defendants and Respondents.

CONLEY, P. J.—The plaintiff, Cheryl Turner, sued Nancy Nadine Mannon on twin theories of wilful misconduct and negligence, for injuries received in a single-car accident at the intersection of Highway 65 and Avenue 96 at Terra Bella in Tulare County. Nancy's mother, Dasie Mannon, was also joined as a party, being the owner of the automobile in which the accident happened and the signer of her minor daughter's application for a driver's license. At the end of a four-day trial, the jury deliberated for an hour and brought in a unanimous verdict in favor of the defendants.

On appeal, it is, of course, our duty to consider the evidence in the light most favorable to the respondents and to give them the benefit of every reasonable inference, resolving all conflicts in the evidence in support of the judgment. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427 [45 P.2d 183]; *Guerra* v. *Handlery Hotels, Inc.*, 53 Cal.2d 266 [347 P.2d 674].) As pointed out in *Strnod* v. *Abadie*, 181 Cal. App.2d 737, 742 [5 Cal.Rptr. 627], the appellate court cannot speculate as to the grounds upon which the jury found for the respondents, and on the appeal this court must not attempt to reevaluate the evidence; if there is substantial evidence to support the finding of the jury in favor of the respondents, the appellate court cannot interfere. It is worthy of note that the appellant does not contend that there was not substantial evidence to warrant the conclusion reached by the jury.

There are three points which the appellant urges as grounds for a reversal of the judgment against her:

1) The incidental showing that there was insurance coverage of defendants in connection with the proof of payment for the benefit of the plaintiff of $1,000 pursuant to a medical-pay provision of the policy;

2) The failure of the court to instruct the jury on the applicability of the res ipsa loquitur doctrine; and

3) The giving of instructions on contributory negligence.

Plaintiff, Cheryl Turner, and respondent, Nancy Mannon, were close friends. Both were minors when the accident occurred, but Cheryl Turner was 21 years old, and Nancy Mannon 20, at the time of the trial; each had ridden with the other on several occasions; they had been in amateur theatrical productions together. On February 20, 1962, the two girls went to Bakersfield in the automobile of Mrs. Mannon. Nancy's major purpose was to secure her clothes in Bakersfield where she had been attending school, and to bring them to her mother's home in Visalia in Tulare County. Nancy testified that she had asked Cheryl to go with her on the trip for company, but Cheryl said that she had been asked to accompany her friend to help her pack the clothes. The automobile was driven by Nancy. She testified that after they arrived she herself packed all of her clothes and placed them in the car; on the other hand, Cheryl testified that she helped with the clothes. Later the girls both went to the rehearsal of a projected play, and they left Bakersfield at about 8 o'clock in the evening.

The two girls decided that they would return to Tulare County by Highway 65, which left Highway 99 and passed through Terra Bella and Porterville. Cheryl had been acting in a play in Porterville, and she had a young male acquaintance there who had played opposite her; this was one of the reasons for their plan to drive through Porterville.

Respondent had had no serious trouble in operating the car on Highway 99 from Bakersfield, although it was dark, and it had begun to sprinkle. When the two girls got to the point where Highway 65 left Highway 99, it was raining very heavily; they agreed that the rain was coming down in bucketfuls. On Highway 65 there were several extreme curves, and others that were not so sharp. The record shows that Nancy had been able to negotiate all of the curves before the accident and that her car had not left the road or moved onto the shoulder. Cheryl had talked of extreme curves on the roadway, and as the automobile approached a relatively slight curve at Terra Bella, the appellant stated suddenly and emphatically, "This is a curve, Nancy, turn." The respondent thought that they must have arrived at an extreme curve, one of which was in fact several miles ahead, and

having already begun to turn when Cheryl made the statement, she moved more sharply to the left. she then realized she had gone too far, and turned the steering wheel to the right to compensate. But the car struck adobe mud at about the center of the highway and slid out of control into a telephone pole some 8 feet from the edge of the road, injuring Cheryl. The speed of the automobile was about 30 to 35 miles an hour before the accident; the respondent driver testified that she could see the curve that she was intending to negotiate, but that she did not observe any such sharp curve as Cheryl's shouting led her to believe existed at that point. Before the accident, appellant had not demanded to leave the automobile, or requested that respondent should stop the car, although she testified that she was worried because respondent was not completing the turns at the curves as expertly as she thought she should. It is argued in appellant's brief that there were mechanical difficulties in the car, but the record does not support the contention; there was testimony that the automobile was in good condition, and that there were no defects in the brakes, or lights, or windshield wiper. Appellant testified that she saw a reflector at the side of the road indicating a curve, but the record shows that there was no such reflector at the point of the accident.

There was no evidence that respondent was driving at an excessive speed, and she was not cited by the highway patrol officer for violation of any law. A substantial amount of adobe mud had come from an adjoining orange grove onto the highway through the sluicing effect of the rain. The record supports the conclusion that the accident was the result of the heavy rain, the mud on the highway, and in minor part from the fact that the respondent was not as thoroughly familiar with the road as she could have been; these were the causes of the accident, according to the opinion of the investigating highway patrol officer, as developed in the record.

The respondents had the benefit of a policy of liability insurance containing a medical-pay provision; pursuant thereto, the Hartford Accident and Indemnity Company paid $1,000 of the medical expenses of appellant prior to the trial. Evidence of this fact was offered and received over the objection of appellant's counsel. The attorneys for the respective parties took advantage of their opportunity to point out to the jury the meaning and effect of the medical-pay provision in the policy, and that there was no concession of negligence, or wilful misconduct, or liability by reason of the actions of

the driver through the payment of part of the medical expenses of the plaintiff; the policy itself was admitted in evidence as a result of the joint request of the attorneys on both sides.

The first point on which appellant bases a claim for reversal is that it was fatally prejudicial to her for the jury to learn that there was a policy of insurance covering the defendant's car. It is not maintained that there should be a double collection of benefits from the defendants and their insurance company, but only that from the mere fact of insurance having been injected into the case the plaintiff could not have a fair trial. It is a matter of observation, historically, that the usual objection to the mention of insurance in an automobile collision case was that it was believed that a jury would be more likely to decide in favor of a plaintiff if informed that the defendant had a policy of liability insurance. The actuating thought in forbidding a gratuitous reference to insurance in a tort case has traditionally been that mention of such coverage favors a plaintiff. Here, the situation is reversed, and it is now the plaintiff who complains bitterly that the policy of insurance was permitted in evidence.

██ As no plaintiff in a tort action is entitled to recover doubly from a defendant or her insurance carrier (*Dodds* v. *Bucknum*, 214 Cal.App.2d 206 [29 Cal.Rptr. 393]), it was proper to prove that plaintiff's medical bills to the extent of $1,000 had already been paid. ██ Such a medical-pay provision is normally carried in policies of automobile insurance today, and such a provision has nothing to do with liability, but covers the payment of the medical expenses of anyone injured in the automobile referred to in the policy, irrespective of whether or not such injury was a proximate result of wilful misconduct, or negligence, in the operation of the car. ██ In a tort action it is proper to prove in elimination of a portion of the damages claimed by the plaintiff the amount received from a joint tortfeasor (*Laurenzi* v. *Vranizan*, 25 Cal.2d 806 [155 P.2d 633]). ██ Concededly, the amount of damages recoverable by reason of the tort of another is not reduced by the amount of compensation received by such party from purely collateral sources (25 C.J.S., Damages, § 99, p. 647; *Inglewood Park Mausoleum Co.* v. *Ferguson*, 9 Cal.App.2d 217 [49 P.2d 305]; *Loggie* v. *Interstate Transit Co.*, 108 Cal.App. 165 [291 P. 618]; *Clark* v.

*Burns Hammam Baths,* 71 Cal.App. 571 [236 P. 152] ; *Peri* v. *Los Angeles Junction Ry. Co.,* 22 Cal.2d 111 [137 P.2d 441] ; *Anheuser-Busch, Inc.* v. *Starley,* 28 Cal.2d 347 [170 P.2d 448, 166 A.L.R. 198] ; *Gersick* v. *Shilling,* 97 Cal.App.2d 641 [218 P.2d 583] ; *Dodds* v. *Bucknum, supra,* 214 Cal.App.2d 206). Here, the payment was not collateral, but was made on behalf of the defendants, and it would be unfair to insist that, if liability were fastened upon them, they or their insurance company for them should pay the same amount of damages twice.

▪ It has always been the rule that the existence of insurance may properly be referred to in a case if the evidence is otherwise admissible. (*McPhee* v. *Lavin,* 183 Cal. 264, 269 [191 P. 23] ; *Galbraith* v. *Thompson,* 108 Cal.App.2d 617, 623 [239 P.2d 468] ; *Noble* v. *Bacon,* 129 Cal.App. 177 [18 P.2d 699] ; *North* v. *Vinton,* 17 Cal.App.2d 214 [61 P.2d 950] ; *Lafrenz* v. *Stoddard,* 50 Cal.App.2d 1 [122 P.2d 374] ; *Kroplin* v. *Huston,* 79 Cal.App.2d 332 [179 P.2d 575] ; 7 Cal.Jur. 2d, Automobiles, § 377, pp. 288, 291.) It follows that the court was not in error in admitting the evidence which incidentally showed the existence of liability insurance covering the defendants.

Appellant's second argument for a reversal is that the court erred in failing to instruct the jury that the res ipsa loquitur doctrine was applicable to the case. There is a failure on the part of the appellant's counsel to show by the record that appellant requested any such instruction; this is a complete answer to their contention. ▪ It is the duty of an appellant who complains that the court did not give an instruction to show that the appellant requested such an instruction on the subject matter in question. (3 Cal.Jur.2d, Appeal and Error, § 161, pp. 643-644.)

▪ On the merits, it is obvious that res ipsa loquitur does not apply to an automobile accident which occurs during a heavy rain storm and which is due, in part, to the existence of slick mud on the highway. ▪ The elements which must be present before the doctrine is applicable are, according to Prosser on Torts (3rd ed./1964), page 218:

(a) That there is an accident of a kind which ordinarily does not occur in the absence of someone's negligence;

(b) It is caused by an agency or instrumentality within the exclusive control of the defendant; and

(c) It is not due to any voluntary action, or contribution, on the part of the plaintiff.

 Common knowledge tells us that accidents frequently occur due to heavy rainstorms, wet streets, and the presence of slippery substances on the highway. Here, the situation was not in the exclusive control of the defendant driver, and, it appears that the accident may have been due, in part, to the contributory negligence of the plaintiff.

 Appellant's counsel lastly objects to the instructions on contributory negligence, saying that there was no credible evidence to support an inference of negligence on the part of the plaintiff. On the contrary, the record indicates that the sharp and sudden movement to the left on the part of the defendant driver was due to the strident exclamation of plaintiff concerning the curve. It is obvious that a plaintiff may be guilty of contributory negligence by reason of an unexpected, or stressed, exclamation or statement made by her to a defendant, causing alarm and exaggerated or sudden movement, which leads to an accident.

We find no error in the record; the judgment is affirmed.

Brown (R. M.), J., and Stone, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 29, 1965.